CITY OF PRINCETON *ex rel.* ETHEL BARBER, *Admx., etc.* *v.* FIDELITY & CASUALTY COMPANY OF NEW YORK *et al.*

(No. 8429)

Submitted September 29, 1936. Decided December 8, 1936.

*Hartley Sanders, Walter G. Burton* and *French & Easley,* for plaintiffs in error.

*Martin & Martin* and *Clay S. Crouse,* for defendant in error.

LITZ, JUDGE:

This is an action on a pistol bond for wrongful death. Judgment was entered upon the verdict of a jury for $1750.00 in favor of the plaintiff, City of Princeton, which sues for the use and benefit of and at the relation of Ethel Barber, as administratrix of Woodrow Barber, deceased, against the defendants, The Fidelity & Casualty Company of New York, and John Newkirk; and defendants prosecute error.

On February 4, 1935, defendants, John Newkirk, principal (as police officer of the City of Princeton), and the Fidelity & Casualty Company of New York, surety, signed and delivered a bond, under Code 1931, 61-7-5, in the penalty of $3500.00, conditioned to pay all costs and damages to which any person may be entitled because of the improper, illegal or negligent use by Newkirk of a pistol or other weapon. Newkirk and Kennith Richards, policemen of the City of Princeton, and C. C. Elmore and J. W. Munsey, constables of Mercer County, arrested the deceased, Woodrow Barber, on a criminal warrant or warrants shortly after midnight of April 24, 1935, at his home in the City of Princeton after arousing him

from bed. Soon after his arrest, while attempting to escape, Barber (then seventeen or eighteen years of age) was shot by Newkirk or Munsey, and died from the wound June 21st, following.

According to the testimony of the officers, the only eye witnesses to the tragedy, the boy was about fifty yards away running up a street of the city when Newkirk and Munsey, standing twenty-five or thirty feet apart, each fired one shot; he was nearing a brushy swamp, a lumber yard, and a railroad yard covered with many cars, and by continuing his course for about fifty yards would have been out of sight of the officers. The shots were fired after Munsey and Newkirk had pursued Woodrow a short distance, and when, according to their claim, they realized that they could not overtake him. One shot took effect, striking the deceased in the pit of the right arm. He immediately turned and came back to the officers. Dr. Gordon L. Todd, who treated the boy, testified that the bullet ranged upward, and expressed the opinion that it had struck and glanced from some object before reaching final lodgment in the right shoulder of deceased. Elmore, who held the warrant or warrants on which the arrest was made and who had previously arrested Woodrow for other law violations, testified that he summoned the other officers to assist him in making the arrest because the boy was prone to flee to escape arrest, later to be apprehended.

There are no assignments of technical error. The sole reliance for reversal is that the evidence does not support the verdict. The issues of fact developed in the evidence are (1) whether the arrest was made under a misdemeanor warrant or a misdemeanor warrant and a felony warrant; (2) whether the shot which struck the deceased was fired by Newkirk; and (3) whether the shooting of deceased was necessary to prevent his escape.

First. The officers, Elmore, Munsey and Newkirk, testified that the deceased was arrested on a felony warrant, charging him with breaking and entering a railroad car, and a misdemeanor warrant for carrying a pistol which were read to him at the time of the arrest.

Ethel Barber and Myrtle Barber, mother and sister of the deceased, who were sleeping in a room close to his, testified that the officers stated at the time of the arrest that they were arresting Woodrow on a pistol charge. Richards testified that Elmore never informed him nor anyone else in his presence that he had a felony warrant for the arrest of the deceased. A. F. Simms, a special agent of the Virginian Railroad, by whom the felony warrant purported to have been sworn out, was wavering in his testimony as to whether the warrant had been issued before the arrest. One of counsel for plaintiff stated Simms had informed him that the warrant was not sworn out before the arrest. The docket of the justice who issued the warrant bore erasures and other evidence of irregularities relating to the charge.

Second. On the issue of whether Newkirk or Munsey fired the fatal shot, Munsey testified that he did not, while Newkirk stated that he shot into the street about twenty feet to the right of the deceased. Munsey was not asked and did not state in what direction he fired; but merely replied in answer to a question by counsel for defendants, whether he knew *where* the bullet from his gun "went", that he did not. The shot causing the death of Woodrow Barber was admittedly fired by Munsey or Newkirk, and the evidence, in our opinion, justifies the finding of the jury that it was fired by Newkirk rather than Munsey. The jury could well have inferred this fact from the admission of Newkirk that he was consciously shooting within twenty feet of the boy, at night, fifty yards away, when considered with the absolute denial of Munsey that he was responsible for the injury.

Third. An officer may not wound or kill a fleeing misdemeanant. 18 A. L. R. 197, 200; 39 A. L. R. 1306. Assuming (without deciding) that Woodrow was arrested on a felony, as well as a misdemeanor, warrant, was the shooting necessary to prevent his escape? In view of the evidence indicating that Newkirk had gone only a short distance before firing the shot which took effect in the body of the deceased, the youth of the prisoner, and the fact that Newkirk did not fire a warning, before the

fatal, shot, we also believe the jury was justified in finding that the shooting of deceased was unnecessary to prevent his escape. Newkirk says he had pursued the prisoner about thirty yards before shooting. This statement is questionable in view of the testimony of Munsey that he was only about thirty feet from the house in which the arrest was made, and that Newkirk was standin directly opposite him in the street when the shots were fired. Newkirk admits he thought at the time that the mere firing of a shot would probably stop the boy. Under the common law rule, permitting an arresting officer to wound or kill a fleeing felon to prevent his escape, the necessity of the force employed by the officer is, ordinarily, to be determined by the jury from the facts and circumstances of the case. *Thompson* v. *Norfolk & Western Railway Co.*, 116 W. Va. 705, 182 S. E. 880; *Hendricks* v. *Commonwealth*, 163 Va. 1102, 178 S. E. 8. There is no basis in the evidence of this case for a departure from the general rule.

The judgment of the circuit court is, therefore, affirmed.

*Affirmed.*