STATE OF WEST VIRGINIA *v.* WILLIAM BURNETTE

(No. 8524)

Submitted February 24, 1937. Decided April 3, 1937.

*Salisbury, Hackney & Lopinsky* and *Lon G. Marks,* for plaintiff in error.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

MAXWELL, JUDGE:

The defendant, William Burnette, convicted in the intermediate court of Kanawha County of the unlawful, but not malicious, wounding of Ralph Wills and sentenced to penitentiary confinement of two years, prosecutes this writ of error to a judgment of the circuit court of said county, affirming the action of the trial court.

In February, 1936, the defendant, acting in his capacity of chief of police of the town of Cedar Grove in said county, shot and seriously wounded in the right arm Ralph Wills, age 20, who at the moment was fleeing from the officer in order to avoid arrest by him under two misdemeanor warrants in the officer's possession. The shooting occurred at the town of Ward which is also in said county. Under a new statute, Code 1931, 8-4-5, a municipal police officer may make an arrest anywhere within his county under a warrant issued by the proper authority of his municipality for an offense committed therein.

It is legal primer law that a police officer or other conservator of the peace charged with the execution of a misdemeanor warrant may not shoot or otherwise imperil the life of the one therein accused in order to effect his arrest or prevent his escape. *City of Princeton ex rel. Barber* v. *Fidelity and Casualty Co.,* 118 W. Va. 89, 188 S. E. 757; *Crosswhite* v. *Barnes,* 139 Va. 471, 124 S. E. 242, 40 A. L. R. 54; 4 Am. Jur., p. 54. But the defendant says that he did not intend to shoot Wills, but shot merely to frighten him into cessation of flight.

Such attempted excuse is no excuse at all. "Shooting with firearms by officers in pursuit of fugitives charged with minor crimes, as a ruse to prevent further flight, is illegal as a reckless use of firearms * * *." *State* v. *Boggs,* 87 W. Va. 738, 745, 106 S. E. 47, 50, 18 A. L. R. 1360. On the facts, the case is strongly against the defendant.

But, on the defendant's challenge of the sufficiency of the authentication of the indictment, there is presented a grave procedural question which goes to the very basis of the prosecution. The indictment does not carry on the face or back the prosecuting attorney's signature in his own hand or by that of a deputy. On the face of the indictment, at the proper place, his name appears in typewriting immediately above the words "Prosecuting Attorney." On the back, his name is printed over the words "Prosecuting Attorney." The indictment bears on its reverse the indorsement "A True Bill: J. H. Tucker, Foreman." The foreman's name was written with a pen and presumably, is his own proper signature.

It is a general rule that, in the absence of statute, an indictment need not be signed by the prosecuting official. *Brown* v. *Commonwealth,* 86 Va. 466, 10 S. E. 745; 2 Wharton's Criminal Procedure (10th Ed.), section 1281; Joyce on Indictments, section 447. We have found no West Virginia case on the point, but, presumably, prior to the enactment of the present statute on the subject, the general rule stated would have been held applicable in this jurisdiction.

Consider now the statute, Code 62-9-1, effective January 1, 1931. This section prescribes the general form of indictments. The first lines of the section read: "All indictments in this State, if procured, found and returned in all other respects as provided by law, shall be sufficient if in the following form:" (A generalized or skeleton form is set forth). Then, concluding: "Found upon the testimony of ————————————————, duly sworn in open court to testify the truth and sent before the grand jury, this the ——— day of ——————————, 19———. (Signed) ———————————————— Prosecuting Attorney." This is followed by the phraseology: "Said

indictment shall have legibly indorsed on the reverse side thereof the words 'State of West Virginia versus —————————————. Indictment for a ——————— (Felony or Misdemeanor, as the case may be). ——————— —————————— Foreman of the Grand Jury. Attest: ————————————————, Prosecuting Attorney of —— ———————— County, West Virginia.' "

The above quoted first lines of this section of the statute indicate a legislative intent that it is not indispensable that the outlined form of indictments shall be followed; that an indictment adopting different phraseology will be good if essential elements are properly set forth. Therefore, we reach the conclusion that, though the prescribed form indicates the legislative desire or intention that prosecuting attorneys should sign their names on the face of indictments, the requirement, if such it be, is directory and not mandatory. Consequently, failure to incorporate such signature does not vitiate an indictment. But a different situation attends in the subsequent portion of the statute. (Quoted above). This latter provision of the statute carries the word "shall." Our language embraces no more imperative or exacting word. When the legislature enacts that something "shall" be done, the requirement is mandatory unless, because of context of the immediate statute or conflicting provisions of other statutes, it be necessary to construe the word "shall" as "may". But in the section under consideration, there is no possible basis for impairment of the rigor of the word "shall". Whether it is expedient and advisable, for the purpose of definite authentication and avoidance of possible mistake and even fraud, that an indictment should be inscribed on its reverse side with the signatures of both the grand jury foreman and the prosecuting attorney, is purely a matter of legislative policy. The wisdom of the requirement cannot be gainsaid. A general statute, respecting construction of statutes, provides that "when the signature of any person is required, it must be in his own proper handwriting, or his mark, attested, proved, or acknowledged." Code, 2-2-10 (c).

Long before the adoption of the statute of 1931 requir-

ing prosecuting attorneys to attest indictments, a holding was made in the case of *State* v. *Grove*, 61 W. Va. 697, 57 S. E. 296, that the want of the usual memorandum on the back of an indictment, "a true bill", signed by the foreman of the grand jury, does not vitiate the indictment. It was there considered that the court's order, showing the impaneling of a grand jury, their charge by the court, and their return and presentment of an indictment against the party arraigned, was sufficient, without the signature of the grand jury foreman on the back of the indictment. We think, however, inasmuch as a court order in such circumstances is merely reflective of what has taken place *aliunde*, a better rule, even in the absence of statute, would require the authentication of an indictment to be inherent in the instrument itself as primary evidence of its genuineness. This would be in the nature of physical fact. The matter of authentication is by no means conclusive if it reposes alone in the court's order. Maybe, indeed, a paper identified as an indictment by the clerk of the court in the preparation of the court's order is a counterfeit substituted by a designing person who has surreptitiously withdrawn the indictment without the clerk's knowledge. The possibility of such a happening will be greatly lessened, and the forestalling of challenge of the genuineness of any indictment made much more certain if indictments are required to carry the signatures of one, or still better, two officials.

But, whatever might be the court's present holding on that proposition, the question is foreclosed by the statute under consideration. By the use of the word "shall" the legislature has demanded and required that every indictment returned by a grand jury in this state shall be authenticated on the reverse side thereof by both the signature of the grand jury foreman and the signature of the prosecuting attorney. Therefore, we are constrained to hold that the indictment at bar, not carrying on its back the indorsement of the prosecuting attorney, is fatally defective on motion to quash, and the defendant having taken timely advantage of the defect by motion to quash the indictment, his said motion should have been

sustained. Further, on this point, we are of opinion that the attestation by the prosecuting attorney should be made not later than at the time of the reporting of the indictment to the court by the grand jury.

Inasmuch as the case may be tried again under a duly authenticated indictment, we deem it proper to make reference to some of the other points of error presented on the record.

By state's instruction number one, the jury was told that a man is presumed to intend that which he does, or which is the immediate or necessary consequences of his act; and if the prisoner, with a deadly weapon, without any or upon any very slight provocation, shot and wounded Ralph Wills, the defendant is prima facie guilty of malicious wounding and the necessity rests upon him of showing extenuating circumstances and unless he proves such circumstances or the same appear from the case made by the state, he is guilty of malicious wounding. Such an instruction is not fully appropriate to a case such as this one. A more fitting instruction would properly inform the jury respecting the use of force by an officer attempting to arrest one charged with a misdemeanor. But, we find nothing inherently wrong with the instruction because, just as with a private person, an officer is presumed to intend the immediate or necessary consequences of his act, and if, without any, or on slight provocation, he wounds another with a deadly weapon, he is prima facie guilty of malicious wounding. In such situation, the officer must excuse or justify his act, or establish extenuating circumstances. The fact that he is lawfully armed does not justify him in using a deadly weapon heedlessly.

Another point of error. On cross-examination, the defendant was asked if he had not been convicted in federal court of violation of the federal prohibition law. Without protest or objection, he answered in the affirmative. Later in the trial, he moved the court to strike out the question and answer on the ground that it was prejudicial to him. The court overruled the motion for the reason that the defendant had put his character in evidence by

calling a number of witnesses to testify to his general good reputation as a law-abiding citizen. While it is the policy of the law to throw a mantle of protection around those who have erred and paid the penalty, and therefore does not permit prior derelictions to be reopened and publicly paraded merely for the purpose of humiliating a person and prejudicing him before a jury, such general policy does not extend to a situation wherein he voluntarily has laid open the subject of his prior conduct.

A further point. On cross-examination, defendant was asked by the prosecuting attorney whether about a year before the trial he had shot a man while attempting to arrest him. On objection being made by the defendant, the prosecuting attorney stated that he would not insist on an answer. The court directed the jury to disregard the question. The defendant urges that the mere asking of the question involved prejudice to him. Such a question should not be asked. There is no possible justification for it. It is flagrantly violative of fundamental principles which are so familiar to all lawyers and judges that further discussion is unnecessary.

In the light of the decision, other assignments of error are rendered inconsequential.

Because of the failure of the prosecuting attorney to attest the indictment as mandatorily required by the statute, the point having been seasonably raised by motion to quash, we reverse the judgment, set aside the verdict, sustain the motion to quash the indictment and dismiss the case.

*Reversed and rendered.*