STATE OF WEST VIRGINIA *v.* OKEY DEBOARD

(No. 8616)

Submitted September 22, 1937. Decided November 16, 1937.

H. D. *Rollins*, for plaintiff in error.

*Clarence W. Meadows*, Attorney General, and *Kenneth E. Hines*, Assistant Attorney General, for the State.

MAXWELL, JUDGE:

Okey DeBoard, convicted in the Intermediate Court of Kanawha County of second degree murder of Leo Fizer and sentenced to fifteen years' penitentiary confinement, prosecutes this writ of error to the circuit court's affirmance of the trial court's judgment.

The homicide occurred shortly before midnight, June 26, 1936, in a beer garden and dance hall operated by George Gust in the City of Charleston. The defendant was employed by Gust to keep order in the establishment and was on duty the night of the affray. By reason of his employment, the defendant had been granted by the mayor and chief of police of Charleston a commission as special police officer.

Uncontradicted testimony discloses that just before the killing, the defendant attempted to separate two men who were starting to fight each other; that a large number of persons, men and women, were in the establishment, some of whom were seated in booths and others were dancing in the communicating hall at the rear; that several of the patrons immediately gathered around the defendant and the two fighters; that a melee ensued in which the deceased was fatally shot by the defendant.

From the state's evidence it appears that while de-

fendant was in the act of separating the fighters he was knocked down; that he arose from the floor and began swinging indiscriminately his policeman's mace (sometimes referred to by witnesses in the case as a blackjack), and struck several persons who were close by; that in the scuffle, he was knocked to the floor a second time; that either immediately before or directly after his second fall, his mace was wrenched from him; that as defendant started to get up he drew his revolver and, from a standing position, fired in rapid succession five or six shots at those standing about him; that the first shot struck Leo Fizer, and that three other persons were wounded by the shooting, but not fatally; that Fizer had at no time engaged in the difficulty; that when the firing took place, no one was actually threatening to attack the defendant.

It was the defendant's contention that he acted only in self-defense in firing his revolver; that he was dazed by blows; that after he had been knocked a second time to the floor, the deceased and others were making an onslaught upon him and that, without opportunity to rise, he fired from a recumbent position to protect himself from serious bodily injury or loss of life.

Of the conflict of evidence the jury was of necessity the judge. It was within the jury's province to appraise the conflict and the circumstances as contended for by the state. The jury, from all the testimony and the circumstances, was warranted in believing that the defendant did not shoot in self-defense, but that he acted from vindictiveness and with malice. Therefore, the verdict cannot be set aside on the ground of insufficiency of evidence. This disposes of the first point of error on which the defendant relies.

But the defendant urges that the trial court erred in overruling his demurrer to, and motion to quash, the indictment. The indictment is in approved form, and sufficiently charges first degree murder. Such charge is, of course, inclusive of the lesser degrees of unlawful homicide.

Another element enters here. The statute directs that indictments be signed by the prosecuting attorney, and

requires that on their reverse they shall be attested by that official. Code, 62-9-1. The indictment at bar fails of statutory compliance in both particulars. On the face of the indictment the prosecuting attorney's name appears in typewriting where his signature should be, and on the back where there should be an attestation, his name appears in print. In *State* v. *Burnette*, 118 W. Va. 501, 190 S. E. 905, we held (1) that the statutory provision with respect to the signing of an indictment by the prosecuting attorney is directory merely, and that failure of compliance will not vitate an indictment; (2) that the requirement of attestation of an indictment on its back by the prosecuting attorney is mandatory, and failure of that official so to attest an indictment renders it fatally defective on motion to quash, timely made.

In the *Burnette* case, it was decided that the motion to quash the indictment should have been sustained. At the time that case was before us, we were inclined to the view that a general motion to quash, without specification, is sufficiently far reaching to embrace a failure of attestation. But, for reasons hereinafter set forth, we have now reached the conclusion, and hold, that a general motion to quash does not reach such defect, but that for such a matter to be considered under a motion to quash, there must be particularization of. the point.

For the defense, however, it is urged that such specification was made in the instant case. Reliance is placed on the fact that before entering a plea of not guilty, one of counsel for the defendant thus addressed the court: "If the Court please, we desire to enter a demurrer and motion to quash the indictment generally and move specially to quash upon the grounds that the indictment is not signed by the Prosecuting Attorney of this county but his name is simply written thereon in typewriting, which is not the proper attestation for an indictment." It is to be noted that therein emphasis was placed on, and mention made only of, the failure of the prosecuting attorney to sign the indictment, it being stated that "his name is simply written thereon in typewriting." The typewritten name of the prosecutor is on the face of the indictment and not on the back. So, it must be deemed

that counsel was calling the court's attention to that specific matter. In the last part of counsel's statement, the use of the word "attestation" was inapt. Signature and not attestation was the designated point. There was nothing in the statement of counsel to direct the attention of the court to the reverse of the indictment. So, we conclude that there was no pointing out to the court of the defect on the back of the indictment and reliance thereon.

A general demurrer is a challenge of the sufficiency of the allegations of a pleading. It is an objection that the averments are insufficient in law to support the action or defense. *Grant* v. *Wyatt,* 61 W. Va. 133, 56 S. E. 187. "A general demurrer is one which raises an objection without specifying any particular cause or defect, and is sufficient only to reach matters of substance * * *." 6 Ency. Pl. and Pr., p. 306. "The special demurrer points out specifically the objection relied on, and is necessary to reach defects which are merely formal." *Idem,* p. 307. This is the common law rule. 1 Chitty on Pleading, p. 663. Unless changed by statute, the underlying purpose of a general demurrer is the same wherever it is properly employed, whether in civil or criminal procedure. "It (demurrer) is a submission to the court of the claim that, assuming the facts alleged by the other party to be true, they do not in law sustain that for which they are put forth." 2 Bishop's New Criminal Procedure, p. 606, section 776.

In this state, until recent years, in civil cases, only general demurrers were employed and, in fact, they were prescribed. Code 1923, Chapter 125, Section 28. That section was held to abolish special demurrers and to obviate the necessity of specifying grounds of demurrer. *Cook* v. *Dorsey,* 38 W. Va. 196, 18 S. E. 468. Our present statute, effective January 1, 1931, Code, 56-4-36, requires that demurrers in civil cases specify the points on which reliance is placed. But there is nothing in our statutes to impress on a general demurrer in criminal procedure any more restricted effect than that which obtains under the common law rule of general demurrer. In Virginia, prior

to the formation therefrom of the State of West Virginia, there was in existence for a period of years a statute requiring that grounds of demurrer be specified and that the court should not regard any other defect or imperfection "unless something so essential to the action or defense, as a judgment, according to law, and the very right of the cause, cannot be given, be omitted." Virginia Code, 1819, Chapter 128, Section 101. But the requirement as to specifying grounds of demurrer was abolished before the division of the state in 1863. The Virginia Code of 1860 provided for general demurrers in civil cases. *Idem*, Chapter 171, Section 30. Such was our inheritance, and so it remained until 1931. But even when the stated Virginia requirement of particularization of grounds of demurrer was in effect, the supreme court of that state held that the statute did not apply to criminal procedure. *Commonwealth* v. *Jackson*, 2 Va. Cases, 501. On this background, it is manifest that in West Virginia the sufficiency of the allegations of a pleading in a criminal case may be brought in question by a general demurrer. On such demurrer, without specification, every point of allegation is challenged. But a demurrer is limited to deficiencies which appear on the face of the indictment or plea, and does not extend to other matters. "Objections not apparent on the face of the indictment are not ground of demurrer." Abbott's Crim. Trial Brief, p. 52. In conformity: *Watts* v. *Commonwealth*, 99 Va. 872, 39 S. E. 706.

In 1851, the Virginia court, in the case of *Lazier* v. *Commonwealth*, 10 Gratt. 708, held that in a criminal case the same objection may be made on a general as on a special demurrer. This would seem to establish the precedent in the Virginias for reaching by general demurrer matters of both substance and form appearing on the face of an indictment. See discussion in *State* v. *Ball*, 30 W. Va. 382, 4 S. E. 645. But a demurrer cannot reach defects not so appearing.

In criminal procedure, what is the purpose of a motion to quash, and to what extent is it operative?

Such motions have been held effective to place under the special scrutiny of the court not merely the particular

pleading attacked, but also matters in the background, as, for example, irregularity in the impaneling of the grand jury or in the manner of finding or returning the indictment. Rapalje's Criminal Procedure, section 143. The scope of the motion varies in different jurisdictions. Abbott's Criminal Trial Brief (3d Ed.), p. 76, and cases cited. In the Virginias, however, the motion has long been circumscribed. In the case of *Bell* v. *Commonwealth* (Va.), 8 Gratt. 600, the court, having under consideration the subject of motions to quash indictments, held that "the cases in which the Court, on the motion of the party accused, ought to quash are, where the Court has no jurisdiction; where no indictable offense is charged; or where there is some other substantial and material defect." In that case there is cited to support the opinion I Chitty, Criminal Law, p. 248. Consult Lee's Criminal Trial in the Virginias, Sec. 6. The terminology of the rule settled in the *Bell* case is general, but, for reasons hereinafter stated, it should be limited to defects which the pleading itself discloses, and not extend to matters of background.

Without doubt, a defect of allegation in an indictment may be challenged by motion to quash as well as by demurrer. For such purpose, the two methods of attack are employed inter-changeably. A general motion to quash is comparable to a general demurrer and, without particular mention, such motion will reach any matter which a general demurrer would reach.

By reason of our criminal statute of jeofails (Code, 62-2-11) a motion in arrest of judgment does not have its full common law scope. Consult *State* v. *Ball,* 30 W. Va. 382, 387, 4 S. E. 645. That statute provides: "Judgment in any criminal case, after a verdict, shall not be arrested or reversed upon any exception to the indictment or other accusation, if the offense be charged therein with sufficient certainty for judgment to be given thereon, according to the very right of the case." See discussion in *State* v. *McGinnis,* 116 W. Va. 473, 181 S. E. 820. But if an indictment wholly fails to charge an offense the defect should be "taken into consideration by the court on the motion to set aside the verdict and award a new

trial," though there was no demurrer, motion to quash, nor motion in arrest of judgment. *State* v. *McGinnis,* *supra.*

The practice with reference to the scope of a motion to quash is probably somewhat variant in different trial courts of the state. It may be considered, in conformity with the broader conception of the extent of the motion, that points not appearing on an indictment may be reached by the motion. But this would have the effect of bringing in matters which may better be determined on plea in abatement. The special province of such plea, in criminal procedure, is to reach points of challenge which are extrinsic of the indictment; to present factual matters which tend to impeach its legality. "Pleas in abatement are either founded on some defect apparent on the face of the record, or upon some matter of fact extrinsic of the record, which renders it insufficient." *Tilley* v. *Commonwealth,* 89 Va. 136, 15 S. E. 526, 532. This is illustrated by our case of *State* v. *Cook,* 81 W. Va. 686, 95 S. E. 792, wherein this court held: "The appropriate way to put in issue the validity of an indictment because of the improper constitution of the grand jury which found the same is by plea in abatement."

Though, as above stated, a motion to quash will operate as extensively as a general demurrer, there is a special field wherein a motion is peculiarly efficient, and that is to reach matters not reachable by demurrer nor within the realm of pleas in abatement. Typical of such matters are defects on the reverse of an indictment, such as failure of attestation. But, to give such efficacy to a motion, extending beyond the scope of a demurrer, there should be particularization of the points on which reliance is placed.

In the common law state of Illinois, the necessity of circumscribing the motion to quash and of requiring particularization thereunder of the points to which a general demurrer would not extend, has been clearly stated by the court as follows: "A general motion to quash the indictment, without specifying any particular wherein it was defective, was made orally in the circuit court and it

was denied. The motion was therefore in the nature of a general demurrer and raised only questions concerning defects in substance. On a writ of error the trial court's ruling in denying such a motion can be held to be error only where there are innate and substantial defects in the indictment which render it insufficient to support a judgment." *People* v. *Nelson,* 320 Ill. 273, 150 N. E. 686, 688. In West Virginia, as above stated, a general demurrer or a motion to quash will reach all defects on the face of an indictment, whether of form or substance. Comprehending this amplification, the sound and well-grounded Illinois rule should be recognized as operative in this state.

We adhere to our holding in *State* v. *Burnette,* 118 W. Va. 501, 190 S. E. 905, that the failure of an indictment to carry the prosecuting attorney's attestation on its reverse side renders it fatally defective on motion to quash, if timely made. However, supplementary to that adjudication, we now hold that the timely-made motion must specifically direct the court's attention to such defect. A general motion can be augmented only through the instrumentality of particularization.

For the reasons stated, we find that the trial court committed no error in overruling the defendant's demurrer and motion to quash.

Another point of error arises from the cross-examination of defense witness, Charles S. Gillespie, wherein he was asked by the prosecuting attorney if he had not been indicted and convicted in that court "some time ago" for gambling. The defendant's objection to the question being overruled by the court, the witness, without protest, answered in the affirmative. In the case of *State* v. *Price,* 113 W. Va. 326, 167 S. E. 862, 863, the propriety of such questions was discussed at length. It was therein emphasized that a trial must be fair to witnesses as well as to the accused, and attention was called to the fact that reversible error may easily arise because of disregard of the principles there set forth. But, further, it was stated that where the cross-examination relates to a recent transaction or conviction bearing directly on the present

character and moral principles of the witness, and is therefore essential to due estimation of his testimony by the jury, the court may permit the inquiry, within reasonable limits, and the appropriateness of such inquiry must, in the circumstances, rest largely in the sound discretion of the trial judge. Syllabus three of that case states: "Subject to the right of a witness to decline to answer incriminating or degrading questions on cross-examination, it is within the sound discretion of the trial court to exclude or permit such cross-examination." In the light of these principles, we perceive no error in the trial court's permitting the witness, Gillespie, to be asked concerning a recent conviction for gambling.

Error is assigned respecting the testimony of a state witness that she saw the defendant, in the course of the disturbance, strike with a blackjack several persons, including Harmon Artrip. This is said to be error because Artrip was called later in the trial as a defense witness and testified that so far as he knows, he was not struck that night by the defendant. He admits, however, that he was "pretty full", and that the first he knew about an injury he in fact received that night was when he came to a realization thereof on regaining consciousness in a nearby hospital. Clearly, there was no error in the challenged testimony of the state's witness.

Error is laid by the defendant to the giving of state's instructions Nos. 2 and 5 over his objection.

Instruction No. 2 is purely abstract, and, for that reason, if for no other, should not have been given. *State* v. *Wilson*, 95 W. Va. 525, 121 S. E. 726; *Parker* v. *Building & Loan Association*, 55 W. Va. 134, 46 S. E. 811. Whether the giving of an abstract instruction is error, will depend on the circumstances of the case. Although an instruction, considered alone, is too general or abstract, if the subject thereof was properly laid before the jury by other instructions, so that it is improbable that the jury was misled by the general or abstract instruction, the judgment will not be reversed on account of that instruction. *State* v. *Dodds*, 54 W. Va. 289, 46 S. E. 228. Inasmuch as the law of self-defense was fully presented to the jury

in two defense instructions, the abstraction of state's No. 2 will not be considered prejudicially erroneous. By this instruction, the jury was told that where a plea of self-defense is relied on in a trial for murder, "the law is that the plea of self-defense is not available to a party unless he was without fault in bringing about the difficulty", and, in any case, the necessity relied on to excuse the killing must not arise out of the prisoner's own misconduct. The quoted portion of the instruction is erroneous as an abstract statement of law. A party may be entitled to rely on self-defense, though, in the circumstances, he was not entirely without fault. "A man does not lose his right of self-defense unless he has done some wrongful act. Mere innocent or accidental cause of difficulty or combat * * * is not enough." *State* v. *Taylor*, 57 W. Va. 228, 240, 50 S. E. 247, 251. If the case at bar involved a situation wherein the difficulty had been brought about by some trivial, innocent or accidental conduct of the defendant, this instruction would have been clearly prejudicial. But such is not the background. Either, as contended by the defendant, he was wholly without fault and in nowise responsible for the difficulty, or, as urged by the state, he was guilty of flagrant conduct which produced the homicide. The quoted language is not only wrong in principle but is not within the theory of either the prosecution or the defense. However, the defendant's right of self-defense, based on the evidence, having been properly stated to the jury in defense instructions Nos. 9 and 10, the inapt and abstract language of state's instruction No. 2 should not be held to have injected prejudicial error into the trial.

State's instruction No. 5. By this instruction the jury was told that, to support the defendant's plea of self-defense in the killing of Leo Fizer, it must appear from all the evidence and circumstances in the case that at the time of shooting the deceased, the defendant believed and had reasonable grounds to believe he was in imminent danger of death or great bodily harm at the hands of the deceased, and that the defendant shot him for the purpose of protecting himself from such apparent danger, but that the defendant acted at his peril, as the jury must

pass upon all his actions in the premises. One of the objections goes to the statement that the defendant acted at his peril. There was no error in the use of that language. It is a familiar phrase, found in many cases. Typical: *State* v. *Cain*, 20 W. Va. 679. The principal objection to the instruction, however, goes to the point that it applies only to self-defense against the deceased and does not take into consideration the conduct of others who were present. For the defense, it is asserted that if the circumstances were such that the defendant had the right to shoot to protect himself from an onslaught of several persons, and one of the bullets which he fired happened to strike the deceased, the fact of the deceased's being struck by a bullet is incidental merely; that the defendant was not limited to the right of self-defense against the deceased only; that the instruction carries that import and is therefore erroneous. With the assertion that the instruction is not full and complete, we concur. But the instruction must not be appraised alone. It must be read in conjunction with defendant's instructions wherein we find that the jury was fully and fairly informed as to the defendant's right of self-defense against any and all menacing individuals.

The refusal of the defendant's instructions Nos. 1, 7, 11, 12, 13 and 14 is relied on as prejudicial error. Instruction No. 1, calling for a directed verdict of not guilty, was rightly refused. The giving of an acquittal instruction in such circumstances would have involved an abuse of judicial power. Instruction No. 7 presents an attempted definition of reasonable doubt. The legal expression, "reasonable doubt", is an evanescent thing, difficult of exact definition. The necessarily abstruse phraseology of an effort to define the term may tend to confuse rather than assist. For this reason, the refusal thereof was proper. Also, the instruction is wholly abstract. Instruction No. 11 presented commingled discussions of both voluntary manslaughter and self-defense. Because it is not clear and is confusing, the instruction was properly refused. Instruction No. 12 is a voluntary manslaughter instruction, wherein there is no mention of heat of passion, nor is an equivalent phrase employed. There

was no error in its rejection. Number 13 is a self-defense instruction. Because this matter was fully and correctly covered by defendant's instructions Nos. 9 and 10, the court, with propriety, rejected No. 13. The fourteenth instruction would have told the jury to find the defendant not guilty if they believed there was a balancing of the testimony whether he acted in self-defense. The instruction is sought to be based on *State* v. *Zeigler*, 40 W. Va. 593, 21 S. E. 763, syllabus five. That point of decision was expressly overruled in the case of *State* v. *Staley*, 45 W. Va. 792, 32 S. E. 198.

Observing no prejudicial error in the record, we affirm the judgment of the circuit court and the judgment of the trial court.

*Affirmed.*