STATE OF WEST VIRGINIA

*v.*

E. H. FOLEY

(No. 9940)

Submitted January 14, 1948.   Decided March 23, 1948.

*T. C. Townsend, M. E. Boiarsky, D. L. Salisbury,* and *Grover C. Belknap,* for plaintiff in error.

*Ira J. Partlow,* Attorney General and *J. Chandler Curd,* Assistant Attorney General, for defendant in error.

Fox, JUDGE:

On March 1, 1944, the defendant, E. H. Foley, shot and killed one Joseph Groves, at Widen, in Clay County. At the October term, 1944, of the Circuit Court of said county a joint indictment for murder was returned by the Grand Jury, impaneled at that term, against the said Foley and Ranson Kirk for said homicide. The defendants to said indictment, having demanded a separate trial, the State elected to try Foley first. His trial began on November 28, 1944, and on that day Foley appeared in open court, in his proper person, assisted by counsel, and at that time entered a formal personal plea that he was not guilty in manner and form as charged against him in said indictment. The trial continued until the 9th day of December, 1944, when the jury returned the following verdict: "We, the jury, find the defendant E. H. Foley not guilty of murder either of the first or second degree; but we do find him guilty of voluntary manslaughter as charged in the indictment." On December 18, following, a motion to set aside the verdict, aforesaid, was overruled, the

judgment of the court entered on said verdict on that day, and the defendant sentenced to confinement in the penitentiary of this State. To the judgment aforesaid, the defendant prosecuted a writ of error in this Court, and on November 13, 1945, we reversed the said judgment, set aside the jury verdict, aforesaid, granted the defendant a new trial, and remanded the case to the trial court for that purpose. *State* v. *Foley*, 128 W. Va. 166, 35 S. E. (2d) 854.

The case, being remanded to the Circuit Court of Clay County, came up for a second trial on October 14, 1946, on the same indictment, and the trial continued until October 18, following, when the jury returned the following verdict: "We, the jury, find the defendant E. H. Foley, guilty of voluntary manslaughter as charged in the indictment in this case."

The order entered by the trial court on October 15, 1946, showing the proceedings had on that day, contained the following:

"This day came the State by its Prosecuting Attorney and the defendant E. H. Foley in person and assisted by counsel, and the defendant demurred to the said indictment and moved the Court to quash the indictment for certain reasons assigned, and recorded by the Court stenographer, which demurrer and motion to quash having been considered by the Court are overruled, to which actions of the Court in overruling said motion and demurrer the defendant excepted; and, nothing further being shown in delay of trial the Court proceeded to empanel a jury to try the cause."

Then was shown the selection of the jury, and the adjournment of the court to the day following.

At the beginning of the trial, on October 14, 1946, and before the jury had been impaneled, counsel for the defendant made and had entered upon the record the following demurrer and motion to quash:

"The defendant, E. H. Foley, demurs to the indictment pending against him and moves to

quash the same. In support of said demurrer and motion to quash, defendant says that the indictment upon which he is about to be tried was returned at the October term, 1944, by the grand jury attending upon that term; the indictment is designated 'Felony Indictment No. 1, State of West Virginia vs. E. H. Foley and Ranson Kirk'; this is a first degree murder indictment; it alleges that E. H. Foley and Ranson Kirk on the 1st day of March, 1944, and before the finding of this indictment in the said County of Clay, feloniously, wilfully, maliciously, deliberately and unlawfully did slay, kill and murder one Joseph Groves, against the peace and dignity of the State; the said E. H. Foley was tried under this indictment at the October term of said court, 1944, and as a result of said trial a jury found the defendant E. H. Foley not guilty of murder in the first degree and not guilty of murder in the second degree, but did find the defendant E. H. Foley guilty of voluntary manslaughter. The defendant says that this indictment now before the court, upon which the defendant is about to be again tried, is not a proper indictment upon which to try him; that the mere reading of this indictment to the jury would tend to prejudice the rights of the defendant because it recites and uses the language usually found in a first degree murder indictment. The defendant further says that the highest offense for which the defendant E. H. Foley can now be convicted under this indictment is voluntary manslaughter and, therefore, the indictment should not allege any offense of a greater degree than voluntary manslaughter; the statute prescribes the form of an indictment for first degree murder and it likewise prescribes the form of indictment for voluntary manslaughter; before the defendant can be properly tried upon a proper indictment, it is his position that the matter should go back to the grand jury and an indictment returned for an offense not greater than voluntary manslaughter.

The defendant further, in support of said demurrer and motion to quash, says that the indictment upon which the defendant is about to be tried hereinbefore referred to and returned by the grand jury at the October term, 1944, of this

court, is signed by S. W. Bryant, Acting Prosecuting Attorney; the defendant suggests there can be no such officer as an Acting Prosecuting Attorney; he is either Prosecuting Attorney or he is not Prosecuting Attorney; and inasmuch as every valid indictment requires the signature of the Prosecuting Attorney appended thereto, defendant believes that this indictment for that reason is bad."

The foregoing demurrer and motion to quash were each overruled, to which action of the court the defendant excepted at the time.

On November 7, 1946, the defendant appeared and moved the trial court to set aside the verdict of the jury, and to award him a new trial, on the following grounds:

"Because the court erred in overruling defendant's demurrer to the indictment and in overruling defendant's motion to quash the indictment; also because the verdict of the jury is contrary to the law and the evidence; because the court erred in refusing instructions offered by the defendant and objected to by the state, and in preparing and giving to the jury a charge in lieu of the instructions offered by the defendant, as appears from the written objections both to the manner of giving and to the substance of the charge aforesaid, endorsed on the instructions aforesaid and the charge, and signed by the Judge, and, further because the court erred in admitting testimony offered by the state and objected to by the defendant, and rejecting testimony offered by the defendant and objected to by the state, to all which rulings of the court the defendant at the time excepted."

This motion was overruled.

The defendant then moved the said court in arrest of judgment, on the same grounds as those assigned in support of his motion for a new trial, which motion the court overruled, and then entered judgment on the jury verdict, aforesaid, and imposed a sentence of confinement in the penitentiary of this State, to all which actions of the court the defendant excepted at the time. To the judgment of

the Circuit Court of Clay County, aforesaid, we, on April 28, 1947, granted this writ of error, and the case has been argued and submitted for decision.

Following the conclusion of the evidence in the case, the defendant offered, and requested the trial court to give, instructions numbers 1 to 24, both inclusive. The court refused to give any of the instructions so requested, but, acting under Code, 56-6-19, gave a general charge, to which the defendant objected, setting up the parts of the said charge to which he had specific objections. We will hereinafter discuss the points of alleged error, in the refusal to give the said instructions offered, and in the court's general charge as given.

In the defendant's petition to this Court for a writ of error, the following errors are assigned:

"1. The jury verdict is contrary to and is not supported by the law and the evidence and the court erred in overruling defendant's motion to set aside the verdict of the jury and grant him a new trial.

2. The trial court erred in overruling defendant's motion in arrest of judgment upon the verdict of the jury.

3. The trial court erred in overruling defendant's demurrer to the indictment, as well as defendant's motion to quash the indictment.

4. The trial court erred in refusing to give Instructions Nos. 1 through 24, inclusive, offered by the defendant.

5. The trial court erred in charging the jury in lieu of giving instructions offered by defendant.

6. The trial court erred:

(a) In charging the jury on the elements of voluntary and involuntary manslaughter as shown by defendant's objection 1 to said charge (Tr., 593);

(b) In charging the jury that '* * * if you believe from the evidence beyond reasonable doubt that the defendant, E. H. Foley, shot and

killed the deceased, Joseph Groves, with a dangerous and deadly weapon, a revolver or pistol, fired by his hand, the presumption of law is, without further showing, that the defendant is prima facie guilty of voluntary manslaughter. If the defendant would reduce it to involuntary manslaughter, or to justifiable excuse, the burden of proof of facts lowering it, or excusing it, rests on him; but when there is any evidence introduced into the case by either the state or the defendant to show extenuation or excuse, it is for the jury to draw the proper inferences of fact from the whole evidence, and decide the facts upon which the extenuation or excuse depends, according to the preponderance of the evidence,' as shown by Objection No. 2 (Tr., 593, 594);

(c) In charging the jury on the law of self-defense, as shown by Objection 3 (Tr., 594, 595); and

(d) In charging the jury on the law as to defendant's right to self-defense where more than one person acts in concert to injure the defendant, as shown in defendant's Objection 4 to the charge given by the court (Tr., 595).

.7. The trial court erred in refusing to give defendant's Instructions No. 5 and No. 6 (Tr., 597, 598), and it also erred in failing to include in its charge to the jury an instruction bearing on the presumption of innocence in defendant's favor.

8. The trial court erred in pronouncing judgment on the verdict of the jury and in entering judgment on November 7, 1946, sentencing defendant to confinement and imprisonment in the state penitentiary for a term of five years.

9. The trial court erred in admitting testimony offered by the state and objected to by the defendant; and in rejecting testimony offered by the defendant and objected to by the State.

10. The judgment of the trial court is erroneous and void because the record fails to show that the defendant E. H. Foley entered his plea in person to the indictment against him.

11. All other errors apparent upon the face of the record."

We do not consider it necessary to deal at length with the testimony introduced on the trial of this case. While it is true that one of the assignments of error is that the verdict of the jury is not supported by the law and the evidence, the point, as to the evidence, is not stressed in argument. The record before us, as to the evidence, does not show a materially different state of facts from that considered on the first hearing of the case. The present record shows that the defendant fired the shot that killed Joseph Groves, a fact never denied. Generally speaking, the material elements in the case are made the subject of disputes of fact on which a jury might disagree, and this being true, neither the trial court, nor this Court, would now be justified in disturbing the verdict on any factual finding, or a verdict based on a factual situation on which the trial court had properly instructed the jury on the law governing the same. But the following facts, stated as briefly as possible, gleaned from the record, and as pointed out in briefs of counsel, appear therein:

The defendant, Foley, was employed by the United Mine Worker's of America as an organizer, and in February, 1944, was engaged in an attempt to organize the employees of the Elk River Coal & Lumber Company at Widen, in Clay County; on February 23, 1944, while visiting Widen, he was warned by Elmer Groves, a son of Joseph Groves, to leave Widen and not to return. Notwithstanding this warning, Foley returned to Widen on February 28, 1944, when the said Elmer Groves made an assault upon him, after which Foley left Widen, after Joseph Groves had told him to get out of Widen and stay out and that "if you come back in here, by God, bring an ambulance or hearse along". On March 1, 1944, Foley returned to Widen, accompanied by Ranson Kirk, where he found Joseph Groves and his two sons, Elmer Groves and Bill Groves, near the barber shop in the Y.M.C.A. Building. About two o'clock of that day, Bill Groves and Elmer Groves left the Y.M.C.A. Building, and Bill Groves stopped at Foley's car while Elmer Groves remained near the rear of said car. Bill Groves was invited by both

Foley and Kirk to get in their car to which invitation he gave no answer, and Elmer Groves then stepped up and asked why Foley had returned to Widen. Many witnesses testify as to indications of trouble, and after Kirk had left the car an altercation arose between him and Elmer Groves. Foley and Kirk both asked Joseph Groves to take his boys and go home, to which Groves did not reply. The altercation between Elmer Groves and Kirk continued, and Groves broke loose from some people who were trying to restrain him, and started toward Kirk, threw him upon the ground, and after the struggle which ensued shots were fired by Kirk and injuries to Elmer Groves resulted therefrom.

Meanwhile, according to the statement of Foley, he saw Joseph Groves coming toward him in a vicious manner. The evidence tends to show that Foley tried to back off, but was struck by Joseph Groves, and Foley and Groves wrestled for some twenty or thirty feet. Groves was a man who weighed from 175 to 180 pounds, Foley much less. Foley admitted that he intentionally fired three shots, and stated that a fourth shot went off accidentally when Mrs. Groves grabbed his arm. According to a witness for the State, one Allen, Joseph Groves was shot when he rushed at Foley, and this witness states that the defendant, Foley, afterwards said: "Well, I had three reasons for it. I had suffered a deathly punishment from Elmer the day before, and he was running around there aiding and abetting it, when he (Joseph Groves) followed me out to the car he threatened me and told me not to come back there, and this day he did not make any effort to take Elmer home, and, what I would term, silence is permission—as good as to tell Elmer to go ahead with the job". Foley stated, in effect, that, at the time he fired the shots, he believed his life was in danger, and that he was in danger of great bodily harm, and that he did not shoot Groves until he, Groves, had made an effort to strike and beat him. Joseph Groves died from the effect of the wounds inflicted by Foley. These facts clearly show that there was a broil and quarrel, accompanied by a physical

altercation, between the participants in this unfortunate affair, and, the killing being admitted by Foley, the sole question presented to the jury was whether his act in shooting Groves was justifiable; and if not justifiable, to ascertain and find by their verdict of what offense he was guilty, subject, of course, to the instruction given the jury by the court that it could not find Foley guilty of a higher degree of offense than voluntary manslaughter.

In the brief filed in behalf of the defendant, there is relied upon as error, the same assignments, in substance, as those stated in his petition for writ of error, though in a slightly different form, and having been once stated need not be repeated. Under "POINTS AND AUTHORITIES", errors are alleged under four headings which we will expand and state as the following and more specific assignments, varying slightly as to the order in which they are stated: (1) Foley should have been tried under an indictment for voluntary manslaughter and not under an indictment for murder; (2) the indictment is void because it was not attested by the prosecuting attorney; (3) the judgment of the trial court must be reversed because the record fails to show that the defendant entered a plea to the indictment in person; (4) the trial court erred in its charge to the jury on the definition of voluntary manslaughter; (5) it was error for the court to charge the jury to the effect that, merely because Foley used a revolver in shooting and killing Groves, the presumption of law was that Foley was *prima facie* guilty of manslaughter; (6) the court erroneously charged the jury on the law of self-defense; (7) the court erred in its charge to the jury as to the defendant's right to self-defense where more than one person acted in concert to injure the defendant; (8) the court erred in failing to instruct the jury that the law presumes the defendant to be innocent. We will take up these points of alleged error in the order stated above.

In our opinion, there is no merit in the first assignment. As stated above, the defendant was indicted for murder, and on his trial on that charge he was found not guilty of

murder either of the first or second degree; but guilty of voluntary manslaughter. Of course, defendant could never thereafter be convicted of any offense higher than voluntary manslaughter, and the jury was so instructed on the second trial. The point made that the defendant could not be called on to face a murder indictment, when he could not be convicted thereof seems to us unrealistic. It is common knowledge that in most homicides, indictments for murder are returned. The mere charge of murder has not been heretofore considered as having any particular influence on juries, and they are always instructed, as they were in this case, that the indictment is not evidence. The general charge to the jury given by the trial court contains the following language: "The court instructs the jury that the indictment in this case, which you will take with you to the jury room when you go to consider of your verdict, charges the defendant with murder; and, further that the law includes in that charge the offense of manslaughter, and the defendant may be properly tried for the offense of manslaughter, just as though it had been mentioned in the indictment, although you can not in any event find the defendant, E. H. Foley, guilty of any greater offense than voluntary manslaughter, and Ranson Kirk is not now on trial."

This charge clearly told the jury that, under the indictment for murder, defendant could be tried for the offense of voluntary manslaughter, and could be convicted of no higher offense. It was, therefore, in fact, a trial for manslaughter and for no higher offense. We think the charge given by the court correctly stated the law, and served to fully protect the defendant on the points covered therein. These long established practices should be given proper weight. The situation here present is not new, but is a common occurrence where, on a charge of murder there is a verdict of not guilty of murder of the highest degree, with a conviction of murder of the second degree, or of manslaughter. In such cases, where a new trial is ordered, the trial is always had on the original indictment, with proper charge as to the highest offense of which the

defendant could be convicted. So far as we are advised, the objection to this procedure is here raised in this Court for the first time. This does not necessarily condemn it; but we see no good reason why the old established practice should be changed.

The second point of assigned error is that the indictment, on which the defendant was tried, was void because it was not attested by the prosecuting attorney of Clay county. On the back of the indictment appears the following: "A true bill. Ellis Friend, Foreman. S. W. Bryant, Acting Prosecuting Attorney." The objection is based on the contention that neither the constitution nor the statute laws of this State provide or recognize an office such as "acting prosecuting attorney"; and that the holding of this Court in State v. Burnette, 118 W. Va. 501, 190 S. E. 905, and State v. DeBoard, 119 W. Va. 396, 194 S. E. 349, that under Code, 62-9-1, the failure of the prosecuting attorney to attest an indictment renders it defective, on motion to quash, timely made. On this ground, it is contended, the attestation of the indictment was a legal nullity, and that the indictment is void.

The office of prosecuting attorney is a constitutional office, and statutory provision is made for an election to such office; for the appointment of assistants, and, in some instances, for the appointment of a special prosecutor, in cases where neither the prosecutor nor his assistant can act; but there is no constitutional nor statutory recognition of an "acting prosecuting attorney".

We do not think, however, that this minor irregularity should be held to invalidate the indictment; first, because it is doubtful whether the motion to quash on that ground was timely made; and, second, and more decisive, we conclude that an attestation of an indictment by the person in charge of the prosecution of a particular case, at the date the indictment therein is returned, is sufficient, and substantially meets the requirements of the statute, and the decided cases, on that point. The matter of the form in which the attestation is made, the exact signature of

the person in charge of the prosecution who is performing the duties of a prosecuting attorney in a particular prosecution, should not be given undue importance. At the most, it only relates to the identification of an indictment, and in no way bears upon the charge appearing upon the face of the indictment, which, of course, must plainly state the offense with which a defendant is charged.

It is contended that because the record does not affirmatively show that the defendant appeared in person and pleaded not guilty, there can be no judgment entered on the verdict in this case. The record before us on this writ shows that the defendant did appear in person at the beginning of the trial; but does not show that he, in person, entered a plea of not guilty then or thereafter. A defendant charged with a felony must, at some time, appear and plead in person. *Younger* v. *State,* 2 W. Va. 579; *State* v. *Sutfin,* 22 W. Va. 771; *State* v. *Allen,* 45 W. Va. 65, 30 S. E. 209; *State* v. *Moore,* 57 W. Va. 146, 49 S. E. 1015. Clearly, the purpose of the requirements, held by the cases cited above, was that the defendant in a felony case should always be given an opportunity to appear in court, in person, and deny the charge against him by a personal plea of not guilty. In this case, however, the defendant had his opportunity to appear in person and to plead to the same indictment as that on which he was tried in the case at bar; and had, in fact, appeared thereto in person and entered his plea of not guilty. This was done on November 28, 1944, as appears from the record of the defendant's first trial for the offense charged in the indictment on which he was convicted in the second trial, the record of which first trial is now available and before the Court. Therefore, the defendant has pleaded, in person, to the indictment on which he was tried, and that plea still stands, and is a part of the record of this Court. The duly certified record of cases filed in this Court, and the printed official copies thereof, filed with this Court's records, become and are a part of our official record, of which, in any matters arising in the same case, we may take judicial notice.

In the general charge given by the trial court, the two .

340

offenses of which the defendant could have been convicted were defined as follows: "Voluntary manslaughter is the killing of one person by another, unlawfully, in the course of a sudden quarrel or broil, in mutual combat or under heat of sudden excitement and passion; involuntary manslaughter is committed when a person, while engaged in an unlawful act, unintentionally causes the death of another, or where a person engaged in a lawful act, unlawfully causes the death of another." The objection to this charge is that in the definition of voluntary manslaughter the word "intentional" or some other equivalent word or expression was omitted.

We think it clear that the crime of voluntary manslaughter necessarily involves the element of intent to kill, although that intent may be presumed from the defendant's action, as, for example, the use of a deadly weapon, or other circumstances. Lack of intent to kill is what distinguishes involuntary manslaughter from voluntary manslaughter. Generally, the definition of voluntary manslaughter includes a reference to the element of intent. In *State* v. *Cain,* 20 W. Va. 679, an instruction defining voluntary manslaughter as "the intentional killing but upon sudden provocation and in the heat of passion" was approved to that extent. In *State* v. *Prater,* 52 W. Va. 132, 43 S. E. 230, it was stated in the body of the opinion that "Voluntary manslaughter is the intentional taking of life without malice, without premeditation, without deliberation". In 2 Lee's Criminal Trials in the Virginias, Second Ed., 822, Sec. 1253, two definitions are given, one is: "Voluntary manslaughter is the unlawful killing of another without malice actual or implied, upon sudden heat or passion, on reasonable provocation, or in mutual combat."; and in a second definition it is stated: "Voluntary manslaughter is the intentional, unlawful and felonious, but not deliberate or malicious, taking of life." Many cases are cited in support of these two definitions. Many of these cases strongly support the theory that the definition in question should contain the word "intentional", or some equivalent

word or expression; while others do not seem to support that theory. In *State* v. *Dickey,* 48 W. Va. 325, 37 S. E. 695, an instruction was given in this language: "The court instructs the jury that voluntary manslaughter is where the act causing death is committed in the heat of sudden passion caused by provocation. And they are further instructed that if they believe from the evidence that the defendant in the heat of sudden passion caused by provocation killed James Tanner at the time and place alleged in the indictment, they should find the defendant guilty of voluntary manslaughter, unless they further believe from the evidence that the defendant believed, and had reason to believe, that the blow which resulted in Tanner's death was necessary to protect his own life or protect himself from great bodily harm, and the necessity of inflicting said blow was not brought about by the defendant's own conduct." Judge Brannon, who wrote the opinion in that case, in commenting on several instructions, including that quoted above, said: "I am unable to see any defects in these instructions." See also *Whitehurst* v. *Commonwealth,* 79 Va. 556; *Honesty* v. *Commonwealth,* 81 Va. 283; *Reynolds* v. *Commonwealth,* 133 Va. 760, 112 S. E. 707. The fact that the use of a deadly weapon is considered an index of the intent to kill, the possession and use of such weapon by the defendant at the time he killed Joseph Groves, should be considered on the question whether, even if there was error in the definition of voluntary manslaughter, the giving of the instruction in the form aforesaid was prejudicial. Judge Haymond and the writer of this opinion are of the view that use of the word "intentional", or some other equivalent term, should be used in the definition of voluntary manslaughter; but that its omission in the circumstances of this case was not prejudicial, and, therefore, not reversible error. However, a majority of the Court is of the opinion that the omission from the instruction of a word of words, including in such definition the element of intent, was prejudicial to the defendant, and reversible error; and that is the holding of the Court.

The trial court in its general charge to the jury said: "* * * If you believe from the evidence beyond reasonable

doubt that the defendant, E. H. Foley, shot and killed the deceased, Joseph Groves, with a dangerous and deadly weapon, a revolver or pistol, fired by his hand, the presumption of law is, without further showing, that the defendant is primâ facie guilty of voluntary manslaughter. If the defendant would reduce it to involuntary manslaughter, or to justifiable excuse, the burden of proof of facts lowering it, or excusing it, rests on him; but when there is any evidence introduced into the case by either the state or the defendant to show extenuation or excuse, it is for the jury to draw the proper inferences of fact from the whole evidence, and decide the facts upon which the extenuation or excuse depends, according to the preponderance of the evidence."

It is quite probable that this part of the charge has been reasoned by analogy to point 11 of the syllabus in *State* v. *Cain, supra,* which reads: "A man is presumed to intend that which he does, or which is the immediate or necessary consequence of his act; and if the prisoner with a deadly weapon in his possession without any or upon very slight provocation gives to another a mortal wound, the prisoner is *prima facie* guilty of willful deliberate and premeditated killing, and the necessity rests upon him of showing extenuating circumstances, and unless he proves such extenuating circumstances, or the circumstances appear from the case made by the State, he is guilty of murder in the first degree." That was an instruction in a murder case, and based upon the assumption of the use of a deadly weapon, and where without any or very slight provocation a moral wound was inflicted; and it was held that in such circumstance, the person who inflicted such wound was *prima facie* guilty of wilful, premeditated, killing, which, of course, was murder of the first degree. But should this principle be extended to cases of voluntary manslaughter, the highest offense for which the defendant could be convicted in the case at bar. All murder implies malice, and, to convict of the highest degree of murder, there must be shown a wilful, deliberate, and premeditated crime. To convict of that degree of offense there must be slight or no provocation. These requirements do

not, and can not, exist on a trial for voluntary manslaughter. There, hot blood, a sudden quarrel, mutual combat, provocation and excitement are supposed to exist. The weapon used is, to a great extent at least, immaterial; or, if material, circumstances concerning its possession and use should be considered. *State* v. *Sauls,* 97 W. Va. 184, 124 S. E. 670. It is assumed that, to some degree at least, reason is dethroned, and hot blood and passion control. This raises doubt whether, in such circumstance, any presumption of guilt arises. Of course, conduct may form the basis of certain inferences on which a jury may find facts; but to hold that on a presumption, without further showing, a conviction may be had, places the defendant in a position where he has the burden of showing himself not guilty, and in that way violates the spirit of the rule that, in a criminal case, a defendant is presumed to be innocent; a presumption which follows him throughout every stage of his trial, even though he is required, in some circumstances, to assume the burden of a positive defense. But even in such a situation he is entitled to the benefit of the presumption of innocence on the whole case. A presumption of law in a criminal case is a dangerous thing, because it can not be rebutted. Inferences and presumptions of fact can be rebutted. These considerations raise doubt in our mind of the correctness of this part of the charge. On the other hand, however, we are confronted with the case of *State* v. *Clifford,* 59 W. Va. 1, 52 S. E. 981, in which it was held: "A sudden intentional killing with a deadly weapon, by one who is not in any way at fault, in immediate resentment of a gross provocation, is *prima facie* a killing in heat of blood, and, therefore, an offense of no higher degree than voluntary manslaughter." This exact holding was repeated in *State* v. *Galford,* 87 W. Va. 358, 105 S. E. 237. In *State* v. *Cassim,* 112 W. Va. 92, 163 S. E. 769, it was stated, in the body of the opinion, that: "It clearly appears that in the case at bar there was no premeditation, lying in wait, or malice aforethought. On the contrary, it was, at most, a sudden intentional killing with a deadly weapon by one not primarily at fault. This is *prima facie* killing in heat of blood. *State* v. *Galford,*

*supra.*" These cases hold that there may be a presumption in favor of the defendant on a given state of facts, but they do not say there can be a presumption of law. While these decisions are persuasive to sustain the charge quoted above, the use of the words "presumption of law * * * without further showing" is not, in our opinion, supported by the cases cited above, nor by *State* v. *Cain, supra.* As stated above, a presumption of law can not be rebutted; inferences and presumptions of fact may be, and they disappear when facts appear which bear on the matter out of which the inference or presumption arises. On the whole, we are of the opinion that the charge should not have been given in that form, and that it was error prejudicial to the defendant.

In its charge to the jury on the law of self-defense, the trial court said: "On the question of excuse to which your attention was called; that is, necessary self-defense which excuses the defendant, you are instructed that when there is a quarrel between two or more persons and both or all are in fault, and a combat as a result of such quarrel takes place and death ensues as a result; in order to reduce the offense to killing in self-defense two things must appear from the evidence and circumstances in the case: first, that before the mortal shot was fired the person firing the shot declined further combat, and retreated as far as he could with safety; second, that he necessarily killed the deceased in order to preserve his own life or to protect himself from great bodily harm." This charge conforms to the sixth point of the syllabus of *State* v. *Cain, supra,* and is established law in this State. The point that, because the State, in another part of the charge, had dealt with a situation where it was stated that a defendant was not required to retreat, did not, in our opinion, tend to confuse the jury. We see no error in this portion of the general charge.

The defendant requested the court to give his instruction number 24, which presented the theory of defendant's rights on the assumption of concert of action against him and Ranson Kirk on the part of Joseph Groves and his

two sons, Elmer Groves and Bill Groves, and the right of the defendant, Foley, to take the life of Joseph Groves, if either his life, or that of Ranson Kirk, was endangered by the action of either Joseph Groves or his two sons. On that point the court in its general charge said: "And the court further instructs the jury that if you believe from a preponderance of the evidence that there were one or more assailants at the time of the combat, and that the deceased, Joseph Groves, was one of them, then the defendant, Ezra H. Foley, had a right to act upon the hostile demonstration of either one or all of them, and to kill either one or all of them, if it reasonably appeared to him that they were present for the purpose and acting together to take his life or do him some serious bodily injury; but, he had no right to kill any one of them, including the deceased, Joseph Groves, unless at the time he believed, and had reasonable grounds for believing that it was then necessary, or apparently necessary, to do so in the proper defense of himself, as you have been instructed. And if the jury believe from a preponderance of the evidence that the defendant was excusable for the killing of the deceased, Joseph Groves, on the grounds of self-defense they should find him not guilty; otherwise they should find him guilty of the appropriate grade of manslaughter 'defined to you previously."

The evidence on the trial would not, in our opinion, have justified the trial court in giving defendant's instruction number 24; and we think that the portion of the general charge, quoted above, fully protects the defendant on any theory of alleged concert of action on the part of Joseph Groves and those associated with him immediately before his death. We, therefore, hold that there was no error in the refusaf to give defendant's instruction 24, nor in the charge given by the court in that point of the case.

Instructions numbers 4 and 5, offered by the defendant and refused by the court, would have told the jury in effect that all presumptions of law are in favor of innocence of the prisoner; that every person is presumed to be innocent until his guilt is shown beyond all reasonable

doubt; and that this presumption is not a mere matter of form, but is a substantial part of the law of the land, and goes with the prisoner throughout every stage of the trial. Nothing in the general charge given by the court touches upon the presumption of the innocence of a defendant in a trial where he is charged with a criminal act; and the refusal of the trial court to give the instructions on that point offered by the defendant, and his failure to incorporate the equivalent thereof in the general charge, is assigned as error.

In the case of *State v. Boggs,* 129 W. Va. 603, 42 S. E. (2d) 1, we held: "The court's refusal to incorporate in its charge in a trial for murder an instruction bearing on the presumption of innocence in defendant's favor constitutes prejudicial error." That statement was made by the court for the first time as a syllabus point, and is a direct holding that it is error not to give an instruction on the presumption of innocence, when a request therefor by a defendant has been made. That a defendant is always presumed to be innocent of a criminal charge, is merely to follow up the undisputed requirement that to convict a defendant he must be shown to be guilty beyond all reasonable doubt. In *State v. Lowry,* 42 W. Va. 205, 24 S. E. 561, there was a refusal to give an instruction reading in part as follows: "The jury are instructed further that the presumption of innocence is not a mere form, to be disregarded by the jury at pleasure, but it is an essential and substantial part of the law of the land, and binding on the jury in this case; and it is the duty of the jury to give the defendant in this case the full benefit of the presumption."; and in connection with the refusal of another instruction, this court said: "There appears to be no good reason why these instructions were not given to the jury." In *State v. Staley,* 45 W. Va. 792, 32 S. E. 198, an instruction was given reading as follows: "The court instructs the jury that the law presumes that the defendant, Virgil Staley, is innocent of the crime charged against him in the indictment in this case, and that such presumption follows him throughout every step of the trial * * *." In *State v. Alderton,* 50 W. Va. 101, 40 S. E. 350, it is stated in the body of

the opinion: "For the accused is entitled to the presumption of innocence and the benefit of every reasonable doubt." In 5 Wigmore on Evidence, 503, it is stated: "The *presumption of innocence* is fixed in our law. But this term has been the subject of two special fallacies, namely, 1, that it is a genuine addition to the number of presumptions, and, 2, that it is *per se* evidence." The authority then goes on to say: "As to the first of these fallacies, it is to be noted that the presumption of innocence is in truth merely another form of expression for a part of the accepted rule for the burden of proof in criminal cases, i. e. the rule that it is for the prosecution to adduce evidence, and to produce persuasion beyond a reasonable doubt. * * * However, in a criminal case the term does convey a special and perhaps useful hint, over and above the other form of the rule about the burden of proof, in that it cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclusion solely from the legal evidence adduced. In other words, the rule about burden of proof requires the prosecution by evidence to convince the jury of the accused's guilt; while the presumption of innocence, too, requires this, but conveys for the jury a special and additional caution (which is perhaps only an implied corollary to the other) to consider, in the material for their belief, *nothing but the evidence, i. e.,* no surmises based on the present situation of the accused. This caution is indeed particularly needed in criminal cases * * *." 20 Am. Jur. 218, it is stated: "It is a well-established principle of the common law, incorporated into the statutory provisions of many states, that a person accused of crime is presumed to be innocent until he is proved guilty. The presumption of innocence attaches even though evidence of good character is not offered and such evidence may strengthen the presumption of innocence. In a criminal prosecution the state has the burden of establishing all the essential elements of the crime with which the accused is charged and must prove his guilt beyond a reasonable doubt. The accused may stand on this presumption of innocence withholding all proof until the

prosecution has established a complete case. The presumption of innocence attends all proceedings against the accused from their initiation until they result in a verdict which either finds him guilty or converts the presumption of innocence into an adjudged fact * * *." In *Coffin* v. *United States,* 156 U. S. 432, it was held that: "A charge that there cannot be a conviction unless the proof shows guilt beyond a reasonable doubt does not so entirely embody the statement of presumption of innocence as to justify the court in refusing, when requested, to instruct the jury concerning such presumption, which is a conclusion drawn by the law in favor of the citizen, by virtue whereof, when brought to trial upon a criminal charge, he must be acquitted, unless he is proven to be guilty." In an extended discussion in the opinion, prepared by Justice White, it appears that the court refused to instruct the jury on the presumption of innocence, although it fully instructed on reasonable doubt. The court said: "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law. It is stated as unquestioned in the text-books, and has been referred to as a matter of course in the decisions of this court and in the courts of the several states." The discussion then goes on to trace the presumption back to the early days of recorded history, and certainly it was an early principle in Anglo-Saxon jurisprudence. A person charged with crime is always protected by the presumption of innocence, and, we think, he is always entitled, upon request therefor, to have the jury told of that presumption. In Virginia there does not seem to be any doubt on that proposition. In *Widgeon* v. *Commonwealth,* 142 Va. 658, 128 S. E. 459, it was held: "The presumption of innocence is so strong that, not only is an accused entitled to the benefit of it, but, if the case be a doubtful one, this presumption is always sufficient to turn the scale in his favor." In the body of the opinion, speaking of instruction, it is stated: "It nowhere deals with the presumption of innocence, a presumption so strong that not only is an accused entitled

to the benefit of it, but if the case be a doubtful one, this presumption is always sufficient to turn the scale in his favor. *Kibler's Case,* 94 Va. 813, 26 S. E. 858. The defendant was entitled to have the jury told that the law presumed him to be innocent, and that this presumption continues until it is rebutted by the Commonwealth beyond a reasonable doubt. *Barker's Case,* 90 Va. 822, 20 S. E. 776." In *Phillips* v. *Commonwealth,* 143 Va. 504, 129 S. E. 259, the trial court refused an instruction which would have told the jury that the defendants were presumed to be innocent of the charge against them and the appellate court held: "While it was error for court, in prosecution for violation of prohibition law, to refuse instruction on presumption of innocence, however, absence of any other instruction on the presumption of innocence should have affirmatively appeared in the record, to constitute error." In the case at bar, the absence of any instruction on presumption of innocence is admitted by the State and clearly shown from the record before us. 3 Michie's Digest Va. & W. Va. Reports, 267, it is stated: "It is elementary that the accused must be presumed to be innocent until his guilt is proven beyond a reasonable doubt." A large number of cases are cited in support of this proposition, although, when examined, they are found to deal generally with the burden of proof, and the requirement that the guilt of a defendant must be established beyond all reasonable doubt. We think it quite clear that in all criminal cases, a defendant is entitled to the benefit of the presumption of his innocence; and that when he requests an instruction on that point, a refusal to give it is presumed to be prejudicial, and held to constitute reversible error. For the reasons stated above, we reverse the judgment of the Circuit Court of Clay County, entered on the 7th day of November, 1946; set aside the verdict of the jury on which the said judgment was based; grant the defendant a new trial; and remand the case to the said Circuit Court for that purpose.

*Judgment reversed;*
*verdict set aside;*
*new trial granted;*
*case remanded.*