State of West Virginia

*v.*

Rae Blizzard

(No. 12715)

Submitted March 4, 1969.          Decided March 25, 1969.

*Samuel D. Lopinsky, John G. Anderson,* for plaintiff in error.

*Leo Catsonis,* Assistant Attorney General, for defendant in error.

CAPLAN, JUDGE:

At the July Term, 1966, of the Circuit Court of Putnam County, the defendant, Rae Blizzard, was indicted by the grand jury of that county for the murder of William Harvey Meadows. Upon arraignment the defendant entered a plea of not guilty. The trial was continued until December 19, 1966, at the termination of which the jury returned a verdict finding the defendant guilty of voluntary manslaughter. A motion for a new trial was overruled and the defendant was sentenced to the indeterminate term of one to five years in the West Virginia State Prison for Women. Upon her petition, this Court, on December 11, 1967, granted a writ of error and supersedeas.

The homicide which gave rise to the aforesaid trial and this appeal occurred at approximately one fifteen on the morning of April 26, 1966 at the trailer in which the defendant resided. This trailer was located on a parcel of land

in Putnam County about two miles east of Winfield near the intersection of Route 17 and Scary Road.

There is no material dispute in relation to the facts of this case. The defendant, a widow of seventy one years of age at the time of the trial, testified that she had known Meadows, the deceased, since 1961 when he was employed by the Hennis Trucking Company. She related that on the afternoon preceding the fatal shooting Meadows had driven her to her doctor's office, after which they went "to the timber job" on her property; that they then went to Mrs. Grishaver's tavern, having arrived there at about seven o'clock where they "Just sat around and gossiped a while;" that he "drank a lot" but he "was alright until he went into that tirade and lit into calling me every kind of name under the sun,"; that she was then frightened of him because he was making threatening remarks, although she permitted him to drive her back to her trailer; that she asked Mrs. Clark, an employee of the tavern, to wait twenty minutes and then call her at her home to ascertain if she was all right; that such call was made after the defendant arrived at her trailer-home.'

Mrs. Blizzard further testified that upon their arrival, Meadows told her that he was "going to a bootlegger to get more whiskey." When she said "You can't do that," he replied "I am going to get whiskey. When I come back I will cut your throat from ear to ear and cut your heart out." After he left the trailer on that occasion, the defendant called the sheriff, reported what had occurred and sought protection. The sheriff's testimony supports this evidence. He testified that Mrs. Blizzard called him and said: "Harvey Meadows just left here and told me he was coming back and kill me."

The record further discloses that Mrs. Blizzard attempted to leave her trailer-home for the purpose of spending the night in a motel but her automobile would not function. She then locked the doors and went to bed. Meadows later returned, was loud and boisterous and threatened the defendant with death or serious bodily harm. When

he attempted to force entrance into the trailer, the defendant says she warned that she would shoot him if he persisted. Thereafter she did fire a shot high over his head into the awning, testifying that if she had wanted to harm him she could have shot him "right in the face."

Meadows persisted in his efforts to forcibly gain entrance to the trailer and continued to threaten the defendant. According to the defendant's testimony the deceased was about to succeed in breaking in. She knew the glass door had been weakened and when she saw a knife in his hand and saw him "pushing and carrying on," she fired three times. According to the autopsy report, one of the bullets entered his chest and lodged in his spine. This was the shot that caused his death.

Two principal assignments of error are relied on by the defendant for reversal of this conviction. It is contended that the court should have directed a verdict for the defendant of not guilty or should have directed the jury that it could not return a verdict higher than involuntary manslaughter. As the second assignment the defendant says that it was reversible error for the court to have given State's Instruction No. 3.

Instruction No. 3, describing the offenses of which the defendant could be found guilty, if the evidence so warranted, described voluntary manslaughter as follows: "* * * voluntary manslaughter is when one person unlawfully kills another person without malice, but under sudden excitement and heat of passion * * *". This Court, on several occasions, has spoken on this matter. In the recent case of *State* v. *Duvall,* 152 W. Va. 162, 160 S. E. 2d 155, it stated as Point 1 of the syllabus, quoting from the syllabus of *State* v. *Foley,* 131 W. Va. 326, 47 S. E. 2d 40: "The offense of voluntary manslaughter involves an intent to kill; and an instruction or charge to a jury defining such offense, which omits any reference to intent as an element of the offense, is presumed to have been prejudicial to a defendant being tried on an indictment under which he might be convicted of that offense, and constituted reversible error."

In addition to the *Duvall* and *Foley* cases, this Court has held in *State* v. *Reppert,* 132 W. Va. 675, 52 S. E. 2d 820, that voluntary manslaughter involves an intent to kill. While there is some difference of opinion among the authorities regarding the definition of voluntary manslaughter, this Court has with clarity noted its views. We cite the above decisions with approval and adhere thereto in ruling that the omission of intent in an instruction as an element of the offense of voluntary manslaughter in this case constitutes reversible error.

We are further of the opinion that the judgment must be reversed and a new trial awarded for the additional reason that the evidence was insufficient to sustain a conviction of voluntary manslaughter. The defendant's testimony to the effect that she shot the deceased in self-defense and in defense of her abode was not materially disputed. In fact her testimony showing her fear of the deceased and her apprehension for her own safety was expressly supported by witnesses. The evidence of record is consistent with the theory of self-defense, the relating of events by the defendant being credible and undisputed.

As stated in *State* v. *Duvall,* 152 W. Va. 162, 160 S. E. 2d 155: "In a trial upon an indictment for murder in which the defendant is convicted of voluntary manslaughter and the evidence is not sufficient to justify a verdict of guilty of voluntary manslaughter, such verdict and the sentence of imprisonment entered upon it will be set aside and reversed by the appellate court."

The judgment of the Circuit Court of Putnam County is reversed and the case is remanded with directions that the defendant be awarded a new trial.

*Reversed and remanded;*
*new trial awarded.*