STATE OF WEST VIRGINIA

*v.*

JERRY S. COKELEY

(No. 13616)

Decided June 29, 1976.

*LaVerne Sweeney* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Frederic J. George,* Assistant Attorney General, for defendant in error.

BERRY, CHIEF JUSTICE:

This is an appeal by Jerry S. Cokeley from a final judgment of the Circuit Court of Barbour County, entered on a jury verdict finding him guilty of grand larceny.

At the October, 1974 term of the Grand Jury of the Circuit Court of Barbour County, an indictment was re-

turned against one William L. Eddy and the defendant, jointly charging them with the taking of 238 pounds of copper, valued at $200.00, from the Dexcar Queen Coal Company, a corporation. Upon his plea of not guilty, the defendant was tried before a jury of the circuit court on December 3, 1974.

According to the State's evidence, at about three o'clock on the afternoon of September 10, 1974, two persons were observed on property owned by the Dexcar Queen Coal Company. Because of the circumstances, employees of the company became suspicious and investigated. William Eddy was apprehended by the mine superintendent and two other employees as he was attempting to remove several burlap bags of copper wiring which had been removed from mine equipment at the site. The second man, who could not be identified, escaped. At the trial, William Eddy testified that the defendant, Jerry Cokeley, was his accomplice in the theft.

Investigating officers found a 1960 Plymouth automobile near the point at which Eddy was apprehended. The automobile was registered to Lorraine Cokeley, the defendant's wife. A motor vehicle registration card for another automobile, bearing the name of the defendant, was found in the Plymouth.

The State called several witnesses to establish the value of the copper wire. These witnesses estimated the wire to be worth between $100 and $200. All evidence introduced to prove the value of the property was objected to by the defendant.

In support of an alibi defense, Cokeley testified that he had been with Eddy during the morning of September 10, 1974 but that they had parted company, Eddy having taken the car which belonged to the defendant's wife. Other witnesses called on behalf of the defense tended to corroborate Cokeley's account that he was neither with Eddy nor near the place of the offense at the time of its commission.

On the evidence developed, the jury returned a verdict against Cokeley of guilty of the offense as charged. Following the denial of post-trial motions, the trial court sentenced the defendant to incarceration for a period of one to ten years.

The defendant cites ten assignments of error for reversal, several of which will be treated together. The State has confessed error on two of the assignments. Nevertheless, all of the assignments will be examined since this Court has made it clear that confessions of error do not automatically entitle a party to a reversal. It must be ascertained that the errors confessed are supported by law and constitute cause for reversal of the judgment. *State v. Goff*, ____ W. Va. ____, 221 S.E.2d 891 (1976); *Petition of Hull*, ____ W. Va. ____, 222 S.E.2d 813 (1976). This principle is clearly stated in the Syllabus of the *Goff* case as follows:

> "In a criminal case where the state confesses error, urges that the judgment be reversed and that the defendant be granted a new trial, this Court, upon ascertaining that the errors confessed are reversible errors and do in fact constitute cause for the reversal of the judgment of conviction, will reverse the judgment and grant the defendant a new trial."

## I

The first issue raised by the defendant concerns the admission of evidence offered by the State to prove the value of the stolen copper wire. The State called five witnesses to prove the value of the wire but the trial court appears to have excluded the statements of three of the witnesses on the grounds that their testimony was inadmissible hearsay. The evidence allowed by the court to establish value was testimony by police officers based on information which the officers had obtained from other persons. The persons from whom the officers had obtained their information were not called as witnesses. In one instance a witness appeared to have some personal knowledge of value but the basis of such knowledge was not established. The appellant asserts that

this latter evidence was inadmissible hearsay and should have been excluded along with the other.

It is improper to prove value of property by resort to the testimony of a witness whose only knowledge of value was obtained from a third party. *Cofflin v. State*, 230 Md. 139, 186 A.2d 216 (1962); *Wadley v. Commonwealth*, 98 Va. 803, 35 S.E. 452 (1900). While normally the owner of stolen property may testify as to its value because he is deemed qualified to give an opinion concerning the value of the things which he owns, *Commonwealth v. Warlow*, 237 Pa. Super. 120, 346 A.2d 826 (1975); *State v. Anderson*, 20 Ariz. App. 309, 512 P.2d 613 (1973), a witness, other than the owner, may give his opinion as to value only if he is qualified by special knowledge of and experience with the particular species of property. *Bonds v. State*, 247 Ind. 260, 214 N.E.2d 796 (1966); *People v. George*, 398 Ill. 318, 76 N.E.2d 60 (1947).

All of the witnesses who testified as to the value of the stolen copper wire predicated their opinions in whole or in part on representations made to them by third persons. Although the record indicates that some of the witnesses may have had personal knowledge upon which they based their estimates, there was no development of the foundation for the asserted knowledge. Therefore, all evidence with regard to the value of the property involved was of doubtful competency and, inasmuch as this case must be retried, the value should be proved by a witness or witnesses who have acquired, by their dealings, some personal knowledge of copper or copper wire and its market value.

## II

The second error assigned, and the first confessed by the State, is that the trial court failed to instruct the jury on the presumption of innocence of the defendant. Four instructions were offered by the defendant dealing with the presumption, three of which were refused outright and the fourth amended by the trial court to exclude language relating to the presumption. It is a fun-

damental right of a defendant to have the jury instructed as to the presumption of innocence and we have repeatedly held it to be reversible error for a trial court to fail to do so. *State v. Pietranton*, 140 W. Va. 444, 84 S.E.2d 774 (1954); *State v. Foley*, 131 W. Va. 326, 47 S.E.2d 40 (1948); *State v. Boggs*, 129 W. Va. 603, 42 S.E.2d 1 (1946). The law applicable to this issue is set out in Syllabus Point 8 of the *Foley* decision:

> "In the trial of a criminal case, the refusal of a trial court to give to the jury, when requested to do so, an instruction or charge that the defendant is presumed to be innocent of the charge laid against him in the indictment on which he is being tried, is prejudicial to the defendant, and constitutes reversible error."

On this unequivocal rule, we conclude that the appellant's second assignment of error is well taken and properly confessed by the State and constitutes a proper ground for reversal of the judgment entered below.

### III

As his third assignment of error, the appellant draws this Court's attention to the refusal of the trial court to permit his attorney to examine a report from which a state trooper testified when called as a witness for the State. This is the second point confessed as error by the State. We need look no further than our recent decision in *State v. Dudick*, W. Va.      , 213 S.E.2d 458 (1975), for a resolution of the question presented. The trial events in *Dudick* were virtually identical to those which occurred in the present case. There, the trial court refused to allow the defense counsel to examine a police report upon which an officer had relied to refresh his recollection during his testimony. This Court held that the defense has an absolute right to examine such notes and a reasonable opportunity to study the material in order to prepare cross-examination. The rule announced in *Dudick* is dispositive of the issue presented here and we find that the action of the trial court amounted to reversible error.

## IV

The fourth assignment of error relates to the refusal of the trial court to permit an examination of the jury analogous to voir dire, during the course of trial of the case. During its case in chief, the State called a witness who had not been previously identified to counsel for the defendant or to the jury. The defendant sought to have the members of the jury asked, as they had been during the initial selection procedure, if there was any relationship or friendship between individual jurors and the witness. The court denied the request, to which action counsel objected.

There is nothing in the record to indicate that there was any improper or disqualifying relationship between any juror and the witness who was called to testify. In fact, counsel for the appellant stated during oral argument before this Court that he had not, either during or subsequent to trial, discovered any such relationship. A thorough examination of all proceedings in this case reveals nothing which would even create the "suspicion of prejudice" to which we referred in *State v. West,* W. Va., 200 S.E.2d 859 (1973). On this set of circumstances, we conclude that the court did not abuse its discretion in avoiding the disruption which would necessarily have occurred had the requested procedure been followed during the progress of trial. *State v. Kilpatrick,* W. Va. , 210 S.E.2d 480 (1974).

## V

The events giving rise to the fifth assignment of error occurred when defense counsel was cross-examining William Eddy, the co-indictee and chief witness for the State. During questioning the following exchange occurred:

> Counsel: "You are offering your testimony— what, if any expectations do you have—"
>
> Prosecutor: "I would object to that, Your Honor."

> The Court: "I think he has a right to ask him if he has any expectations."

> Counsel: "Do you think you would get off lighter?"

> Witness: "I wouldn't say that."

> The Court: "What do you mean by that implication? That is not a proper question, Mr. Sweeney. You are trying to imply that somebody is dishonest. If you want to ask him if he has been promised anything that is all right. Don't make implications or I will hold you in contempt."

There is no indication in the record as to what prompted the court's statement; it does not appear that counsel had engaged in any provocative conduct at any point earlier in the trial.

Authorities indicate that where the court directs critical remarks at counsel that such conduct should be viewed in the context of the entire trial. A trial court may admonish or rebuke counsel during the trial if counsel's action requires it. However, it is improper and prejudicial for the trial court to threaten counsel with contempt for attempting to offer or elicit evidence which the court deems inadmissible but which is offered in good faith, particularly where, in a criminal case, the evidence of guilt is conflicting. 75 Am. Jur. 2d *Trial* §§116, 118, 119 (1974). Some courts have held it to be reversible error, per se, for a trial court to make unjustified threats of contempt proceedings against counsel in the presence of the jury. *See, e.g., Sprinkle v. Davis,* 111 F.2d 925 (4th Cir. 1940); *Atlantic Refining Co. v. Jones,* 70 F.2d 89 (4th Cir. 1934). Based on our examination of the totality of the circumstances surrounding the court's denunciation of counsel in the present case, we are of the opinion that the remarks were unwarranted and constitute grounds for reversal.

## VI

The sixth, seventh and eighth assignments of error pertain to the court's refusal to give a number of in-.

structions offered by the defendant. Based on the court's examination of these instructions, we conclude that the trial court acted properly in refusing them as either repetitious, *State v. Putnam,* W. Va., 205 S.E.2d 815 (1974); *State v. Hamric,* 151 W. Va. 1, 151 S.E.2d 252 (1966); *State v. Vineyard,* 85 W. Va. 293, 101 S.E. 440 (1919); or as being unsupported by evidence, *State v. Bennett,* W. Va., 203 S.E.2d 699 (1974); *State v. Vance,* 146 W. Va. 925, 124 S.E.2d 252 (1962); *State v. Stonestreet,* 112 W. Va. 668, 166 S.E. 378 (1932).

## VII

The ninth assignment of error concerns the refusal of the trial court to give Instructions Nos. 20 and 21 offered by the defendant, which were unanimous or "hung jury" instructions. This Court has approved similar instructions in the past. *See, e.g., State v. Warrick,* 96 W. Va. 722, 123 S.E. 799 (1924). However, instructions relating to unanimity of a jury verdict couched in such language as to invite the jury to disagree, are properly refused. *State v. Sibert,* 113 W. Va. 717, 169 S.E. 410 (1933). Further, such instructions contain principles generally understood by jurors and the refusal to give the instruction will very seldom constitute prejudicial error. *Robertson v. Hobson,* 114 W. Va. 236, 171 S.E. 745 (1933). For a general discussion of the principles governing the giving of or refusal to give a unanimous verdict instruction, *see, State v. Taft,* 144 W. Va. 704, 110 S.E.2d 727 (1959). We hold that no independent reversible error was committed by the trial court in refusing to give defendant's Instructions Nos. 20 and 21.

## VIII

A ruling by the trial court denying counsel the opportunity to make an offer of proof on the record is the basis for the tenth and final assignment of error. The attorney for the defendant had asked permission to vouch the record with an answer to a question asked the State's chief witness during cross-examination, to which an objection had been sustained by the court. The court

did not allow counsel to vouch the record then, stating that the record could be made at some unspecified later time.

It is clearly error for a trial court to refuse to allow counsel to state what he proposes to prove when an objection to such evidence has been sustained. 88 C.J.S. *Trial* §73 (1955). The two obvious reasons for allowing record avowals are, first, to permit the trial court to hear the evidence and to ascertain if its ruling is correct, and second, to preserve the evidence for review by an appellate court to determine the propriety of the trial court's exclusionary ruling. The authorities agree that both compelling purposes are frustrated by refusal to permit an offer of proof when requested by any party. *Jones v. Clark*, 418 P.2d 792 (Wyo. 1966); *State v. Davis*, 155 Me. 430, 156 A.2d 392 (1959).

For the reasons stated herein, the judgment of the Circuit Court of Barbour County is reversed and the verdict of the jury is set aside and a new trial is granted to the defendant.

*Judgment reversed, new trial granted.*