STATE OF WEST VIRGINIA

*v.*

THOMAS GORDON WRIGHT

(No. 14217)

Decided December 5, 1978.

*Greene, Ketchum & Mills, Menis E. Ketchum and Larry A. Bailey* for P. E.

*Chauncey H. Browning*, Attorney General, *Gregory W. Bailey*, Assistant Attorney General, for D. E.

MCGRAW, JUSTICE:

On March 13, 1977, two-month-old Jeffory Wright, at home with his parents, was crying and refusing to take

his bottle. His father, the defendant, according to his unchallenged written statement to the police and that of his wife, "began to shake Jeffory real hard and squeeze him to make him quit crying ..." After his wife "hollered at [him] to quit," the defendant "put him down in [a] chair real hard."

But it was too late. Jeffory became very sick and two days later he died in the hospital from a subdural hematoma. The medical testimony, similarly not challenged upon appeal, showed a subdural hemotoma and extensive laceration in the right side of the brain as well as numerous fractured ribs surrounded by hemorrhage.

The defendant was indicted in Wayne County for first degree murder of his son, Jeffory. The trial was held on November 29th and 30th, 1977. The only evidence brought forth by the State to show the acts committed by the defendant was his written statement and the testimony of his wife. No witnesses were called or evidence adduced on behalf of the defendant. The defendant on appeal concedes that his actions caused the infant's death.

The jury found the defendant guilty of voluntary manslaughter, and he was sentenced by the court to the penitentiary for one to five years.

Two issues are raised by the defendant in this appeal:

1. Did the trial court err in not directing a verdict of acquittal on voluntary manslaughter?

2. Did the trial court err in giving over objection State's Instruction No. 6 which reads as follows: "The Court instructs the jury that you may infer that a person intends to do that which he does, or which is the natural or necessary consequence of his own act."

I

At the end of the State's evidence the defendant moved the trial court to direct a verdict of acquittal on first and second degree murder and voluntary man-

slaughter. The court granted the motion only as to first degree murder.

A court upon request should direct a verdict for the defendant whenever the evidence is insufficient to justify a verdict of guilty to a crime charged. *State v. Shahan*, 104 W. Va. 578, 140 S.E. 533 (1927); *State v. McHenry*, 93 W. Va. 396, 117 S.E. 143 (1923). The standard for review applicable to a denial of motion for directed verdict has been recently clarified by this Court in syllabus point 1 of *State v. Starkey*, ____ W.Va. ____, 244 S.E.2d 219 (1978) to be as follows:

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

It is fundamental in this jurisdiction that voluntary manslaughter requires an intent to kill. *State v. Hamrick*, ____ W.Va. ____, 236 S.E.2d 247 (1977); *State v. Blizzard*, 152 W.Va. 810, 166 S.E.2d 560 (1968); *State v. Duvall*, 152 W.Va. 162, 160 S.E.2d 155 (1968); *State v. Reppert*, 132 W.Va. 675, 52 S.E.2d 820 (1949); *State v. Foley*, 131 W.Va. 326, 47 S.E.2d 40 (1948); and *State v. Barker*, 128 W.Va. 744, 38 S.E.2d 346 (1946). The primary question in the case at bar is whether there was sufficient evidence of intent to kill to sustain the conviction of voluntary manslaughter.

Viewing the essentially undisputed facts in a light most favorable to the prosecution, we are convinced that the evidence of intent to kill was manifestly inadequate and that an injustice has occurred in this case.

We do not feel, upon close review of the entire record, that a jury could permissibly find or infer that the de-

fendant specifically intended to kill his son. While such an unlawful and tragic response to the infant's crying could certainly warrant criminal sanction upon a conviction of involuntary manslaughter, there was absolutely no evidence of record showing the crucial element of voluntary manslaughter, intent to kill. We must reverse this conviction. *See e.g.*, *State v. Duvall*, 152 W. Va. 162, 160 S.E.2d 155 (1968) and *State v. Barker*, 128 W. Va. 744, 38 S.E.2d 346 (1946) where convictions for voluntary manslaughter in cases of accidental killings were similarly reversed due to lack of evidence of intent.

## II

Defendant next challenges another time-honored criminal instruction that warrants on close scrutiny in light of the mandates of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed.2d 508 (1975) and our progeny, *State v. Pendry*, ____ W.Va. ____, 227 S.E.2d 210 (1976). The court below instructed the jury that it "may infer that a person intends to do that which he does, or which is the natural or necessary consequence of his own act."

In *Pendry*, of course, this Court determined that *Mullaney* stood for the following general propositions:

1. In a criminal case, the State is required to carry the burden of proving beyond a reasonable doubt every material element of the crime with which the defendant is charged;

2. In carrying its burden of proof beyond a reasonable doubt, the State is not entitled to an instruction which requires a jury to accept as proved beyond a reasonable doubt any element of the criminal offense charged, and this concept embraces presumptions (more properly inferences) as to which the jury may be instructed; and

3. A defendant in a criminal case cannot be required to present evidence either in terms of going forward with the evidence or in terms of bearing the burden of persuasion in connection with any material element of the crime charged.

In *State v. Starkey*, ___ W.Va. ___, 244 S.E.2d 219 (1978) this Court upheld the following instruction from a *Pendry* attack: "The Court instructs the jury that malice and intent can be inferred by the jury from the defendant's use of a deadly weapon, under circumstances which you do not believe afforded the defendant excuse, justification or provocation for his conduct."

The court reasoned at 226 that this instruction was:

> ... not couched in the mandatory language of a presumptive or conclusive finding ... the inference does not even arise unless the jury find an absence of circumstances which "afforded the defendant excuse, justification or provocation for his conduct" ... the instruction is not made binding and contains no language which indicates the defendant has any burden of proof to negate an essential element of the crime.

The State contends that the instruction in the case at bar was proper since it, like the one in *Starkey*, is neither couched in mandatory terms nor shifts the burden of proof to the defendant[1] and further argues that the court must look at the instructions as a whole including two offered by the defendant which clearly show the burden on the State to prove intent.[2]

---

[1] An instruction that one is *presumed* to intend that which (s)he does or which is the necessary consequence of his or her act has been the subject of considerable litigation in this and other jurisdictions. This instruction has been sanctioned in cases such as *State v. Taylor*, 57 W.Va. 228. 50 S.E. 247 (1905); *State v. Kellison*, 56 W.Va. 690, 47 S.E. 166 (1904) and *State v. Reppert, supra,* yet condemned as reversible error in *State v. Barker, supra,* where the defendant was convicted of voluntary manslaughter. Most recently in *State v. Putnam,* ___ W.Va. ___, 205 S.E.2d 815 (1974) this Court approved that instruction and characterized it as "old and good law as far as it goes." *Id.* at 817. While we do not today resolve the issue, we note that in recent years courts expressly or impliedly have tended to differentiate instructions that permit a jury to *infer* intent from those which irrebutably *presume* it. *People v. Moore*, 55 Mich. App. 678, 223 N.W.2d 302 (1974), *cert. denied, Michigan v. McFarland*, 423 U.S. 878, 96 S. Ct. 152, 46 L. Ed.2d 112 (1975).

[2] The court additionally and clearly informed the jury that voluntary manslaughter requires a intent to kill and that if the prosecu-

The Fourth Circuit in *U.S. v. Arthur*, 544 F.2d 730 (4th Cir. 1976) recently approved this same instruction citing *United States v. Trexler*, 474 F.2d 369 (5th Cir.), *cert. denied*, 412 U.S. 929, 93 S.Ct. 2759, 37 L. Ed.2d 157 (1973) and *United States v. Wilkinson*, 460 F.2d 725 (5th Cir. 1972). Quoting favorably from the latter case, it held at 733 that:

> It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the government has proved beyond a reasonable doubt that the defendant possessed the required criminal intent.

We agree that the use of the instruction in the context of this case is not reversible error. As we said in *Starkey, supra* at 226, "Of primary importance is the fact that *Pendry* does not condemn the use of inferences, but only the use of language giving conclusive presumptions to certain facts which are essential to proof of the criminal charge."

A jury may permissibly determine from all the facts and circumstances that a person intended to do that which he did. The proving of intent, by its very nature, mandates such a holding. As this Court said in the year 1901:

> The impossibility of ascertaining the secret intent existing in the mind and heart of the accused, when shown to have given a mortal blow, and of ascertaining and disclosing what mental functions were performed by him in the execu-

---

tion failed to prove specific intent beyond a reasonable doubt defendant could not be found guilty of a crime higher than involuntary manslaughter.

338

> tion of the act, is recognized ... A homicide rare-
> ly declares his intention .... *State v. Sheppard*,
> 49 W. Va. 582, 605, 39 S.E. 676, 686 (1901).

Insofar as the jury was permitted but not required to find from the evidence that the defendant had the intent to kill, and insofar as the jury was properly and adequately advised of the State's duty to prove intent to kill beyond a reasonable doubt, the giving of the instruction was not reversible error in this case.

However, as discussed above, there was not before the jury ample evidence from which it could have made the inference that defendant had the intent to kill. Since the court erred in failing to direct a verdict of acquittal to the charge of voluntary manslaughter, we must reverse the conviction for that offense, grant defendant's motion to reverse, and remand the case for further proceedings consistent with this opinion.

*Reversed; remanded.*